Freemah, J.,
delivered the opinion of the Court.
This bill was filed in March, 1860, by the heirs of ~V. D. Barry, to set aside a sale of real estate made by order of the County Court of Shelby county. The facts are, that V. D. Barry died in April, 1853, •and at the May Term of the Court, thereafter, Isaac Y. Gibson was appointed his administrator. On the 1st day of August, 1853, said Gibson, together with the widow, Henry A. Barry, and the other heirs, filed a petition in the County Court asking a sale of sev *730 eral slaves and the lot in controversy. The petition alleges that the administrator had returned into the Court an inventory of all the personal property and a list of all the debts of his intestate, so far as known; copies of which are offered to be filed: that the petitioners, except Gibson and the widow, are the only heirs and distributees of the deceased, and are entitled, after the payment of the debts and settlement of the estate, to the remainder in distribution: that the personal estate is insufficient to pay the debts after a just provision for the support of the widow: that it will hereafter be necessary, for the purpose of paying the debts and making a distribution among the petitioners, to sell the slaves and . the lot in controversy, after laying off the widow’s dower: and that the petitioners are all of full age and desirous of having the property sold in order that a final settlement may be had as soon as possible. The prayer is, that dower be assigned the widow; and that the remainder be sold, together with the remainder interest covered by the dower, and the proceeds paid to the administrator with directions to discharge the debts of the deceased and pay over the residue as he may be justified in doing, taking refunding bonds from distributees.
The same day the petition was filed, a decree was entered, reciting that the Court was satisfied that the allegations of the petition were true: — and directing the slaves and lot of ground to be sold, for the purpose of paying debts; and, for distribution among the parties, as therein mentioned. The prayer of the petition was granted, commissioners were appointed tn *731 lay off dower, and the balance of the lot was ordered to be sub-divided and sold. The reversionary interest,, as it is called in the decree, covered by the dower, was also ordered to be sold. Under this decree a sale was had, and Frazier Titus and others became the purchasers of the lot, which was reported to the Court and confirmed.
It is now insisted, that this sale is void under the-Act of 1827, ch. 54, secs. 4 and 5, providing for the sale of the real estate of deceased persons} and for-other reasons, that will be hereafter noticed.
The Act of 1827 provides, that when an administrator has exhausted the personal estate of an intestate-in the payment of debts, leaving just debt's against such estate unpaid, and where such intestate dies seized' of real estate situated in any county of this State, it. shall be lawful for any Chancery or Circuit Court of the district or county where such lands or part of them may lie, — on the prayer of the administrator, or any bona fide creditor, whose debt may remain unpaid, — to decree the sale of such lands, or so much thereof as may be sufficient to satisfy the debt set forth and shown to exist:
“Provided, That before any decree shall be entered,, it shall be made satisfaetorily to appear that the personal estate has been exhausted in the payment of bona fide debts, and that the debts for which the salé-is sought, are justly due; and,
Provided further, That said Court shall decree the-sale of such part of the real estate as will be least injurious to the heirs or legal representative.”
*732 The next section is, “ Suits prosecuted under this Act shall be conducted in the same way as other suits in Equity, and sales made under this Act, shall vest in the purchaser a good and sufficient title in fee simple.”
It would seem that this Statute, so plain and unambiguous, when taken in connection with the well-known purpose of the Legislature in its passage, ought to be of easy. construction. Yet, as we know, it has given birth to some, apparently, diverse decisions, growing mainly out of an effort on the part of our Courts to meet the supposed exigencies of what are known as hard eases. We have found, however, that whenever an effort has been made to strain the construction of a plain Statute, or of a Constitutional Provision, the result almost inevitably is to make a set of hard precedents, which embarrass the Courts in their future action. We therefore think the safe plan is to follow the plain intent of the law as it is written; and, if evils arise, leave them for correction by the Legislature.
It is conceded that the County Court has the same jurisdiction to make sales of real estate as the Circuit and Chancery Courts; that is, has concurrent jurisdiction with these Courts: and, we may add, that the Act of 1827 should be liberally construed, in order to attain the end designed, so as to carry out the true intent and meaning of the Legislature: — so we understand the leading case on this subject of Dulles v. Read, 6 Yerg., 53. Still it must not be overlooked that this is a special and limited jurisdiction: — Statutory alone: — and that we must look to the Statute *733 itself to ascertain its boundaries. In the language of Judge McKinney, in the case of Whitemore v. Johnson, 10 Hum., 610, the “ Statute confers upon the. Circuit Court,” (and also the County Court) “a new jurisdiction of a special and limited character. With a wise and most commendable solicitude for the protection of the estates of minors, it has with unusual precision specified and enumerated the facts essential to warrant the exercise of the jurisdiction intended to be conferred.” While,, as we have said, there is some apparent contradiction in some of our decisions on the Act of 1827, on looking into them carefully it will be found that, in their main features, they all agree; and exact a substantial conformity to the requirements of the Statute, in order to give the Court jurisdiction to sell.
The first and leading case construing the Act of 1827, is that of Dulles v. Read, 6 Yerg., 53. The bill was filed in that case by - the creditors of Bacchus against the administrator, heir, and other creditors, asking a sale of the real estate. It alleged that the personal estate had been exhausted; that, the real estate was insufficient to pay all the debts; and sought to have the proceeds of the sale of the realty divided pro rata among all the creditors of the deceased. It also alleged, that the administrator, though all the personal assets had been exhausted, intended to let certain creditors have judgment upon the plea of fully administered in his favor, in order that those favored creditors might proceed by scire facias upon tbe real estate in the hands of the heir. The alleged favored creditors demurred to the bill. The Court *734 Reid, that the Act of 1827, though not a repeal of the Act of 1784:, was intended to remedy the evils which existed in the mode of proceeding against the real estate under that Act. One of which was a multiplicity of suits against the estate and the consequent -costs; and therefore its only object was, that the administrator should bring all the creditors before the Court by the bill he was authorized to file, and have all the claims adjudicated in one suit: and, of course, the same policy applied when the bill was filed by a bona fide creditor of the estate. The other leading mischief was, that under the previous law, each creditor might get his judgment at a different time, and the first might exhaust all the realty and leave others nothing at all: and, we add, the administrator might favor such creditor as he chose and allow judgments to go, by such an arrangement as was charged to exist in the bill in that case. Judge Green then gives the remedy, as provided by the Act of 1827, and says: “It was intended, that the Chancellor, having an account of all the debts before him, and an exact knowledge of the character, description, and probable value of the estate, should take the land into the custody .of the Court, and direct its sale for the benefit of all;” and such a sale should be conducted for the benefit of all and the property made to bring the highest price, and even a re-sale ordered if necessary to the end designated. He therefore concludes, that when the administrator files the bill, all the creditors must ’ be brought in, or may come in, and share rateably in the proceeds of the sale. It *735 was argued in that ease, that the Act restricts the payment of debts out of the proceeds of the land, to such debts as are “shown to exist in the bill,” and that creditors not shown to- exist in' the bill were excluded. To this the Court replied, this construction “ sticks too close to the letter of the Statute, disregarding the design and purport of the Act:”— and that the true construction of the Act was:— All such debts, as, in the course of the investigation which is originated by such hill, may be shown to exist, shall be included.” In answer to the objection, that the jurisdiction to make the sale would be defeated, if it appeared before final decree, that the administrator had money in his. hands, the Court say: that the provision in relation to the exhaustion ,of personal assets, was only intended to preserve the policy of former legislation on this subject: i. e. the appropriation of personalty first to the payment of the debts: and that the Legislature certainly intended to have this policy carried out: — and that should any personal assets be found in the hands of the administrator, on taking the account, the Chancellor, before he decrees a sale of the realty, must apply and exhaust them. The administrator must, therefore, be a party to the bill, “because the Court can only know how the estate has been administered by an investigation of his accounts.”
We hold, then, the true principle to be, that where the bill or petition alleges all the facts required by the Statute, in order to sell the land; and the decree states these facts to have been made out *736 ¡to the .satisfaction of .the .Court, ..and assumes them as the b.asis and the ground on which the Court orders .the .sale: that then in a collateral proceeding, seeking tp attack .the sale, for the want of jurisdiction . to rpake jt, the evidence .on which the .Court acted c.an not be looked tp: — nor can the, correctness of .the copelusion, at which the Court arrived fr.om thpt evidence, be investigated by another inferior i Court, in order to declare the decree, thus made, valid or void. T.he case made in. the pleadings, — i. e. the bill ,or petition, ..and the decree of the Conrt, — alone can ,be looked to, to test the jurisdiction. We think this the only sound principle that can govern in such cases. And while some of the remarks of the Judges, in several of .our cases, might indicate that the evidence before the Court had bpen looked to, to see whether . the .decree , was . warranted, in a proceeding collaterally attacking it; yet, we think the above rule may be .fairly laid down as the just result of all our cases. Whitmore v. Johnson, 10 Hum., 610; Parchman v. Charlton, 1 Col., 381; Moores v. Widow and heirs, 11 Hum., 512.
Several cases are cited, apparently holding that the evidence before the Court pronouncing the decree for sale, may .be looked .to in .a .collateral proceeding; but on careful examination of them it will be seen, that they are not at variance with the general principle here announced. We may here refer to a few of them. The case of Crippen v. Crippen, 1 Head, 128, was ,a case where, the .widow ,and heirs appealed ,,from a decree ordering the sale. Judge Wright says, *737 in commencing his opinion: “ The record does not come collaterally before us, but directly. The land and slaves have not been sold, and there is no question with the purchaser. Matters of error, as well as of jurisdiction, are open for decision.” And, in this,, he announced the true principle. He then points out the errors and lays down, with his accustomed accuracy, the precise practice in such proceedings. This-case was, most unquestionably, correctly decided.
The case of Crabtree v. Niblett, 11 Hum., 488, was a case of a sale void because the minor heirs of the-deceased were not made parties, and the purchaser, by petition, came in and asked to be relieved from his purchase. The sale was clearly void, and. the petitioner was entitled to relief. The Court below attempted to remove the difficulty, and make the sale valid by an amended proceeding. This was held erroneous, and the original sale being void, Niblett was entitled to be relieved. And so we might distinguish other cases.
Another class of cases is referred to, to sustain the proposition, that unless there is a report of the-Clerk and Master showing an insufficiency of the personal estate for the payment of the debts, the sale is void. The cases of Reid v. Huff, 9 Hum., 345, and Frazer v. Pankey, 1 Swan, 75, are of this class; but it will be seen that each of them is a proceeding under our Laws for winding up insolvent estates, and that the Act of 1838, Sec. 3, carried into the Code, Sec. 2388, expressly requires this report, in order to authorize the sale of the real estate; and the Court put its decis *738 ion expressly on this ground. The Act of 1827 has no such requirement. Of course we do not hold, that such a report is not the proper practice in all cases; but simply, that when the Court in its decree under the Act of 1827, asserts -that the facts appear to it, we can not in .a collateral proceeding look behind this decree, to see how it was made to appear; but must take the recitals as conclusive, unless it be on an appeal or writ of error, when such facts will be properly revised, and the conclusion of the Court, if erroneous, corrected. This is in accordance with principles almost too familiar to need a citation of authorities to sustain them. 4 Sneed, 371; 3 Sneed, 59; 6 Hum., 444; 5 Hum., 313. Any other principle would involve the idea, that a decree made by the Chancery Court, for the sale of land might, in after years, upon an original bill filed for that purpose in the same Court, be investigated and reversed, as not sustained by proper evidence; which would be to make each Chancery Court, a Court for the correction of errors in decrees. This is the province of the appellate tribunal. A case in the Chancery Court is referred to by way of illustration, but the same principle applies to all Courts; having concurrent jurisdiction over the same subject matter. These judgments and decrees, when not void on the face of the proceedings, are valid in every other Court, when brought in question collaterally. Errors can only be corrected by a revising Court.
With these principles settled, let us look at these proceedings: i. e. the petition, its allegations, and *739 the decree of the Court: and see if they are void on their face for the want of jurisdiction; or if there is such a recital of facts in the decree, as would authorize the Court, upon that petition, to sell the land.
We need scarcely look at the decree, but take the petition itself and its allegations as true, as if a demurrer had been filed to it. Would the facts stated authorize a sale of the land for the payment of debts under the Act of 1827, ch. 54? We do this because the decree could not do more, fairly, than grant the relief, upon the establishment of the facts alleged. On the face of the decree, it only assumes this much: to quote its language again, it recites: — “ The Court being fully satisfied that the allegations therein contained are true, and that the slaves and land therein mentioned should be sold for the purpose of paying the debts, and for a distribution, it is therefore ordered,” etc. This can only mean, that the facts alleged in the petition, are assumed to be true by the Court; or are found by the Court, (upon what evidence we do not inquire) to be true: and thereupon the Court orders the sale.
The allegations are, in substance, that from his inventoiy returned into Court, — of the personal property and effects coming to his hands, and also from the list of debts due by his intestate, so far as the same have come to his knowledge, — the administrator is satisfied that the personal estate belonging to the decedent, in his hands, and which may come into his possession, is insufficient to pay the debts after setting apart a year’s support for the widow; and that the peti *740 tioners are satisfied, it will hereafter become necessary,, for the purpose of paying the debts and making distribution, to sell the land: then follows the prayer of the petition for the sale. Are- these allegations sufficient? Not unless we can repeal the plain requirements-of the Statute as expounded by this Court: that the petition must show a complete exhaustion of all the personal estate in payment of debts, leaving just debts unpaid;, and the proviso must be complied with:—
“Provided, that before any decree shall be made, as herein directed, it shall be made satisfactorily to appear, that the said personal estate has been exhausted in payment of bona fide debts, and the debt or debts for which the sale is sought, is justly due and owing.”
If these facts had been alleged, and found by the Court to be true, in its decree then under the rules laid down by Judge Green, in the case of Dulles v. Read, even though other debts, in the course of the investigation originated by the petition, than those mentioned in the petition had been found due, or even if it had been found in that investigation that assets by mistake, or oversight, still remained in the hands of the administrator, yet the decree would be valid and the sale proper; and, we add, that it would be the duty of the Court to apply the assets so found to the debts found due; but whether done before or after the order of sale, would not render the decree void. ' The application to these debts as a matter of fact, is the vital point: i. e. the precise sum, as near as possible, for which the land is to be sold, must be known by the Court; so that it may be able to *741 see, that it orders a sale of so much land as will be sufficient to pay the debts, and will not ' needlessly dispose of the land of minors. We then hold, that on the facts stated in the petition, and found. to be true by the decree, it was not lawful for the Court to order the sale of the lot for the payment of the debts.
While the principles of this opinion may affect a 'few sales, yet we deem them sound, and the law to have been always so clear, that no purchaser can complain if he buys, under proceedings that, on their face, do not authorize the Court to sell. But the petition asks the sale on another ground; that is, because it will be necessary to sell in order to partition. The Court clearly had jurisdiction to order a sale of the lot, (except the .remainder interest), for partition. The fact that this ground is joined in the same bill or petition with the other for the payment of debts, will not affect the validity of the sale; although the practice is certainly irregular.
The facts stated in the petition and the decree -can alone be looked to, as in the other case, to see if the Court was authorized to sell for this purpose. The facts stated in the petition are, that the complain•ants, — except Gibson and the widow, — were the only heirs of the said Barry, were all of age, and consisted of five persons, — naming them, — and that it would be necessary for the purposes of a distribution, that the lot mentioned should be sold. The decree of the ‘Court finds these allegations to be true; and that the Hot should be sold for distribution among the parties *742 as mentioned in the petition. Assuming these facts to be true: we have the case of'five tenants in common asking a sale of a lot, on the ground that the sale was necessary for a distribution, as it is called but evidently, from the context, meaning for. a partition of the proceeds among them in severalty, in the proper proportions. We hold that this decree presents sufficient grounds on which to authorize the Court to sell for a partition; that is, it finds that the five-parties were tenants in common, and that it was. necessary to sell for the purpose of a partition. But this does not apply to the remainder interest in the-part allotted to the widow for dower. We consider it settled, that at that time such an interest could not be sold for a partition. Robertson v. Robertson, 2 Swan, 197; 5 Hum., 310. The sale was, therefore, clearly void as to this portion of the lot, and the-Court without jurisdiction to 'make it. As to the claim of the three sons, Henry A. Barry, Daniel Barry, and William A. Barry, and their descendant, the minor complainant, there can be no question but that they are bound by the proceeding for the sale of the land for partition. They were under no disability, knew of the suit, and received their share of the surplus proceeds of the sale. The case of Latimer v. Rogers, 3 Head, 692, is conclusive upon them: where it is held, that a partition in a certain manner, as prayed for by the adults, was conclusive-on them; though void as to the minors, who were-part owners of the land.
They have asked the Court in this case to make- *743 the sale, have ratified it in all its parts, by receiving-the money arising therefrom; and having ample means; of knowing all they desired to know at the time,, they are now estopped to disaffirm it.
But it is earnestly insisted that the two married women, Mrs. Miller and Mrs. Kindell, are not hound,, by reason of the want of authority on the part of the Attorney to use their names in the proceeding and that as they stand on different ground, no estop-pel can affect them unless by reason of fraud. The-facts show that their husbands knew of the suit, and recognized it; and that Mrs. Miller lived in Memphis.. We are satisfied that the wives of each of them knew of the suit: having as much knowledge on the subject as is ever had in such cases. By the settled; custom of our State, the husband, in all matters of business, represents his wife: and we will not infringe-the custom, and push women forward into the arena of business farther than strict law requires. The-receipt of Mrs. Kindell in connection with her husband is in the record, showing that she received, her share of the surplus; also the receipt of Mrs.. Miller. But it does not appear that there was any special power of attorney or authority given by either-of them to Mr. Turnage, who acted as Counsel in the case. We can not see upon what ground this-cari be claimed to be necessary, as it is well settled that, ordinarily, married women are incapable of making a power of attorney or of appointing an agent for any purpose, except under special circumstances. Story, in his work on Agency, says: that while she is *744 •ordinarily incapable of appointing an agent or attorney, yet in case of a joint suit at law, “her husband may make a power of attorney for both”: — for which he cites numerous authorities. The joining of the wife and husband in a petition for a sale of land for partition, was expressly held proper in the case of Winchester v. Winchester, 1 Head, 460, there being no antagonism between his rights and hers in the case. The Court intimate that it might have been error, if they had not been so joined, and say: “ Such joinder was in accordance with the general practice in this State.” It' is insisted, however, that the married women could only pass title to real estate by separate examination; but the Court say: there is no case known where the wife has been so examined, when it has been sought to divest her of her legal estate in land held jointly with her husband. The correctness and binding force of the decree on the married women in this case, as far as the Court had jurisdiction to make the sale, is settled in the case of Winchester v. Winchester We cannot disturb that decision on that question. As to the three adult males, the sale conveyed a good title, by their assent to it, and is a clear estoppel. The remainder interest in the land, covered by the dower, the Court had not the jurisdiction to sell; and the sale is void as to this, so far as the two married women are concerned. They must have a decree for their shares of this part of the lot.
The costs, so far as the married women are concerned, will be paid by the defendants; and the balance by the two sons, and the next friend of the minor.